CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

**MAY 2 4 2012**

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION
May 24, 2012**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **Criminal No.** 7:12Cr40 |
| | ) | |
| | ) | **All in violation of:** |
| | ) | **Counts 1 to 5 and 11 to 91** |
| **v.** | ) | **21 U.S.C. §841(a)(1)** |
| | ) | **Counts 6 to 10 and 92 to 172** |
| | ) | **21 U.S.C. §843(a)(2)** |
| | ) | **Count 173** |
| **LINDA SUE CHEEK** | ) | **21 U.S.C. §856(a)(1)** |
| **Defendant** | ) | **Notice of Forfeiture** |

# I N D I C T M E N T

## INTRODUCTION TO THE INDICTMENT

At all times material to this Indictment:

### LINDA SUE CHEEK

1.     **LINDA SUE CHEEK** received a medical degree from the University of Texas Health Science Center at San Antonio in 1992.  The Virginia Department of Health Professions, Board of Medicine, issued **LINDA SUE CHEEK** a license to practice medicine and surgery on July 1, 1993.  **LINDA SUE CHEEK** completed family practice training at Roanoke Memorial Hospital in Roanoke, Virginia in June 1995.

2.     **LINDA SUE CHEEK** began practice at New River Medical Associates, Inc., in 1999 and maintained a family practice to include a specialty in pain management and alternative medicine.   Since 2009, more than 90% of her patients regularly receive prescriptions for controlled substances.

3.     From 1995 to 2008, **LINDA SUE CHEEK** possessed a Drug Enforcement Administration (DEA) registration number, XXXXXX865, at the registered address of 28 Town Center Drive, Dublin, Virginia, which authorized her to prescribe controlled substances in Schedules II through V.

4.     In February 2008, **LINDA SUE CHEEK** pled guilty to a one-count Information charging her with health care fraud in violation of Title 18, United States Code, Section 1347.  She was sentenced on May 27, 2008, to 4 years probation and ordered to pay restitution.

5.     On June 4, 2008, the Virginia Department of Health Professions, Board of Medicine ordered **LINDA SUE CHEEK**'s medical license be suspended as a result of her felony conviction for health care fraud in the United States District Court for the Western District of Virginia.  The Board of Medicine Order suspending her medical license precluded **LINDA SUE CHEEK** from petitioning the Board for reinstatement until she presented satisfactory written evidence that she had successfully completed a Board-approved comprehensive physician competency evaluation.  This suspension of **LINDA SUE CHEEK**'s medical license caused her DEA registration to become invalid.

6.     On September 30, 2008, a letter was sent from the United States Department of Health and Human Services, Office of Inspector General, notifying **LINDA SUE CHEEK** that she was "excluded from participation in any capacity in the Medicare and Medicaid programs, and all federal health care programs as defined in Section 1128B(f) of the Social Security Act (Act) for the minimum statutory period of 5 years." Exclusion action was effective twenty days from the date of the letter.

7.     On November 17, 2008, by letter **LINDA SUE CHEEK** physically surrendered her invalid Certificate of DEA Registration resulting in her DEA registration number's revocation.

8.     On February 12, 2009, after she completed the Board-required physician competency evaluation, the Executive Director of the Virginia Department of Health Professions, Board of Medicine notified **LINDA SUE CHEEK** that her medical license was reinstated to full unrestricted status with all attendant rights and privileges. That Board of Medicine reinstatement did not, and could not, reinstate her DEA Certificate of Registration.

9.     On February 16, 2009, **LINDA SUE CHEEK** applied for a new DEA Certificate of Registration to allow her to prescribe Schedules II through V controlled substances. Between February 16, 2009, and October 2010, **LINDA SUE CHEEK** actively pursued obtaining a Certificate of DEA Registration.

10.     On February 21, 2009, **LINDA SUE CHEEK** wrote a letter to local pharmacists advising them that her medical license had been reinstated and that she did not have a DEA Certificate of Registration but that she had applied for it and it might take a while for her application to be granted.  She also advised that she would begin accepting patients again on February 23, 2009.

11.     Knowing that she did not possess a valid Certificate of DEA Registration, **LINDA SUE CHEEK** issued prescriptions dispensing Schedules III, IV and V controlled substances.

12.     Between February 23, 2009, and May 14, 2009, **LINDA SUE CHEEK** wrote and signed five (5) prescriptions on her pre-printed  prescription forms dispensing Schedule III - IV controlled substances without having a valid DEA registration number. The following prescriptions were written unlawfully by **LINDA SUE CHEEK**:

> a.     Prescription number C865005 dated February 23, 2009, was written to R. L. for 120 tablets of Lortab 7.5 mg (hydrocodone APAP) (Schedule III) with two authorized refills.  This prescription was filled after the pharmacist crossed out **LINDA SUE CHEEK**'s signature and added Dr. K. S.' signature.

> b.     Prescription number 0328379, dated February 23, 2009, was written to W. R. for 30 tablets of Ambien 10 mg (Zolpidem tartrate) (Schedule IV) with five refills. This prescription was filled.

> c.     Prescription dated March 20, 2009, was written to J. B. for 60 tablets of Lyrica (Schedule V) with two refills.  This prescription and at least one refill was filled.

d.      Prescription number 4001588 dated April 6, 2009, was written to J. S. for 60 tablets of Lortab 7.5 mg (hydrocodone APAP) (Schedule III) with one refill.  This prescription was filled.

e.      Prescription dated May 14, 2009, was written to V. Y. for 30 tablets of Ambien 10 mg (Schedule IV) with five refills.   This prescription was presented at a pharmacy but was not filled by the pharmacist.

13.      All five of the prescriptions described above were written using **LINDA SUE CHEEK**'s surrendered and revoked DEA number, XXXXXX865, on her pre-printed prescription forms, and signed by **LINDA SUE CHEEK**.

14.      A hearing was held in October 2010 on **LINDA SUE CHEEK**'s application for a new DEA Certificate of Registration.  On December 30, 2010, the DEA Administrative Law Judge who presided over the hearing issued a ruling recommending denial of **LINDA SUE CHEEK** 's request to obtain a DEA registration number.  The Administrator of DEA agreed with that recommendation and her application for a DEA Certificate of Registration was denied on October 17, 2011.

15.      On July 8, 2011, the Department of Health Professions, Board of Medicine again suspended **LINDA SUE CHEEK**'s license to practice medicine indefinitely, but for a minimum of 12 months, for violations of Virginia Code Sections 54.1-2915.A(16) and (17):

(16)    Performing any act likely to deceive, defraud, or harm the public;

(17)    Violating any provision of statute or regulation, state or federal, relating to the manufacture, distribution, dispensing, or administration of drugs.

## NEW RIVER MEDICAL ASSOCIATES, INC.

16.     At all times relevant to this Indictment, the defendant, **LINDA SUE**

**CHEEK**, was doing business as the corporate entity, New River Medical Associates, Inc.

New River Medical Associates, Inc., is located at 28 Towne Center Drive, Dublin,

Virginia.  The building is owned by CBA Associates, LLC, of which **LINDA SUE**

**CHEEK** is a Principal, and houses the medical practice on one side of the building and

houses **LINDA SUE CHEEK**'s health products store, SPTH, LLC (Seven Pillars of

Total Health), on the other side.  AY was the only regular employee of New River

Medical Associates, Inc., and served as the receptionist.

## DISTRIBUTION OF CONTROLLED SUBSTANCES - GENERAL ALLEGATIONS AND TERMINOLOGY

17.     The Controlled Substances Act ("CSA") governs the manufacture,

distribution, and dispensing of controlled substances in the United States.  The CSA and

its implementing regulations set forth which drugs and other substances are defined by

law as "controlled substances." Controlled substances are then assigned to one of five

schedules, Schedule I, II, III, IV, or V, depending on their potential for abuse, likelihood

of physical or psychological dependency, accepted medical use, and accepted safety for

use under medical supervision.  The CSA and the Code of Federal Regulations ("CFR")

contain definitions relevant to this Indictment, some of which are set forth below.

      a.    The term "controlled substance" means a drug or other substance, or
immediate precursor, included in Schedule I, II, III, IV, and V, as
designated by Title 21 of the United States Code, Section 802(c)(6),
and the CFR.

b.      The term "Schedule II" means the drug or other substance has a high potential for abuse; the drug has a currently accepted medical use with severe restrictions; and abuse of the drug or other substances may lead to severe psychological or physical dependence.

c.      The term "Schedule III" means the drug or other substance has a high potential for abuse but less than the drugs listed in Schedule II; the drug has a currently accepted medical use with severe restrictions; and abuse of the drug or other substances may lead to severe psychological or physical dependence.

d.      The term "Schedule IV" means the drug or other substance has a low potential for abuse relative to the drugs or other substances in Schedule III; the drug has a currently accepted medical use in treatment; and abuse of the drug or other substances may lead to limited physical dependence or psychological dependence relative to the drugs or substances in Schedule III.

e.      The term "Schedule V" means the drug or other substance has a low potential for abuse relative to the drugs or other substances in Schedule IV; the drug or other substance has a currently accepted medical use in treatment; and abuse of the drug or other substances may lead to limited physical dependence or psychological dependence relative to the drugs or other substances in Schedule IV.

f.      The term "dispense" means to deliver a controlled substance to an ultimate user or research subject by, or pursuant to the lawful order of, a practitioner, including the prescribing and administering of a controlled substance.

g.      The term "distribute" means to deliver (other than by administering or dispensing) a controlled substance.

h.      The term "practitioner" means a medical doctor, physician, or other individual licensed, registered, or otherwise permitted, by the United States or the jurisdiction in which she or he practices, to dispense a controlled substance in the course of professional practice.

i.      The term "dosage" is the amount, frequency, and number of doses of medication authorized by a practitioner, who has been issued a DEA registration number.

18.     The DEA issues registration numbers to qualifying practitioners, who become authorized to dispense Schedule II, III, IV, and V controlled substances.  The term "registrant" refers to a person holding such a DEA registration number.

19.     To legally issue a prescription for a controlled substance a practitioner must be a DEA registrant.  A prescription must be issued for a legitimate medical purpose by a practitioner with a DEA registration acting in the usual course of professional practice. An **order** purporting to be a prescription issued not in the usual course of professional treatment is not a prescription.

## CHARGED CONTROLLED SUBSTANCES

20.     Controlled substances are often known by the trade name assigned to them by the pharmaceutical company.  Some of the controlled substances dispensed by **LINDA SUE CHEEK** include:

a.     Hydrocodone APAP is a Schedule III controlled substance and is an ingredient in various name brand products, including, but not limited to, Lortab and Norco.

b.     Alprazolam is a Schedule IV controlled substance and is an ingredient in various name brand products, including, but not limited to, Xanax.

c.     Clonazepam is a Schedule IV controlled substance and is an ingredient in various name brand products, including, but not limited to, Klonopin.

d.     Diazepam is a Schedule IV controlled substance and is an ingredient in various name brand products, including, but not limited to, Valium.

    e.    Phentermine is a Schedule IV controlled substance and is an ingredient in various name brand products, including, but not limited to, Adipex-P and Fastin.

    f.    Zolpidem tartrate is a Schedule IV controlled substance and is an ingredient in various name brand products, including, but not limited to, Ambien.

    g.    Lyrica is a Schedule V controlled substance.

21.    **LINDA SUE CHEEK** directed the dispensing, and aided, abetted, counseled, commanded, induced and procured the dispensing, of these Schedule II narcotics through prescriptions signed by Dr. K. S.:

    a.    Methadone is a Schedule II controlled substance.

    b.    Morphine is a Schedule II controlled substance and is an ingredient in various name brand products, including, but not limited to, MS Contin, Avinza or Kadian and Morphine Sulfate Immediate Release ("MSIR").

    c.    Oxycodone is a Schedule II controlled substance and is an ingredient in various name brand products, including, but not limited to, OxyContin, Percocet, Endocet, and Roxicodone.

    d.    Oxymorphone is a Schedule II controlled substance and is an ingredient in various name brand products, including, but not limited to, Opana ER and Opana IR.

    e.    Fentanyl is a Schedule II controlled substance.

    f.    Amphetamine is a Schedule II controlled substance and is an ingredient in various name brand products, including, but not limited to, Adderall.  Adderall contains amphetamine and salts of amphetamine, which includes dextroamphetamine.

## THE CONTROLLED SUBSTANCES PRESCRIBING ARRANGEMENT

22.     At all times material to this Indictment, Dr. K. S. was a Doctor of Osteopathy and was a practitioner registered with the DEA with authorization to write prescriptions in Schedules II through V controlled substances until she voluntarily surrendered her DEA registration on October 27, 2010.  Dr. K. S.'s registered location was the Free Clinic of the Twin Counties, Galax, Virginia, where she routinely practiced on Wednesdays.  She did not write prescriptions for controlled substances at the Free Clinic.

23.     In Summer 2008, **LINDA SUE CHEEK** met Dr. K. S. at a religious retreat. Dr. K. S. heard that **LINDA SUE CHEEK** had just lost her medical license.  As she was semi-retired and working only one day a week, Dr. K. S. agreed to see **LINDA SUE CHEEK**'s patients at New River Medical until **LINDA SUE CHEEK** could get her medical license and DEA registration reinstated.  Dr. K. S. began seeing patients at New River Medical Associates, Inc., in Dublin around September 2008.  As she had been suspended from medical practice, **LINDA SUE CHEEK** acted, in part, as a receptionist during this time.

24.     In February 2009, when **LINDA SUE CHEEK**'s medical license was reinstated but her DEA registration application had not been granted, **LINDA SUE CHEEK** changed the medical practice relationship with Dr. K. S.  From February 23, 2009, forward, **LINDA SUE CHEEK** initially saw all new patients first to accept them into the practice.

25.   **LINDA SUE CHEEK** usually charged $150.00 for a new patient office visit.  She charged specific fees up to $110.00 for subsequent office visits depending upon the number of months supply of prescription controlled substances the patient obtained.  Despite her patients' having Medicare, or Medicaid, or other insurance coverage, **LINDA SUE CHEEK** accepted only cash and personal credit cards for her office visits because she had been excluded from participation in those health care benefit programs since 2008.

26.   **LINDA SUE CHEEK** explained to patients that if the patient was prescribed one prescription for a 30 day supply of a controlled substance the cost of the office visit would be $55.00.  To add a second 30 day supply of the prescription for a controlled substance the cost of the office visit would be $85.00.  To add a third 30 day supply of the prescription for a controlled substance the cost of the office visit would be $110.00.

27.   Even though she did not have a valid DEA registration number and contrary to the usual course of professional practice, **LINDA SUE CHEEK**, or A. Y. on her behalf, called in prescriptions for Schedule III and IV controlled substances to pharmacies for new patients on the first visit with **LINDA SUE CHEEK** using Dr. K. S.'s DEA registration number before the patients were ever seen or examined by Dr. K. S., the only physician with a valid DEA Certificate of Registration.

28.   In one instance, on Thursday, May 28, 2009, a patient working with the DEA met with **LINDA SUE CHEEK** as a new patient.  This office visit resulted in

Page 11 of 31

**LINDA SUE CHEEK** calling in a prescription for 45 tablets of hydrocodone, a Schedule III controlled substance, to a pharmacy under Dr. K. S.' DEA registration number. Dr. K. S. was not at the medical office at the time of this visit and never saw or examined this patient prior to the prescription being called in to the pharmacy.

29.     **LINDA SUE CHEEK** rarely conducted appropriate diagnostic testing, prescribed physical therapy or made referrals for psychological or addiction counseling.

30.     This practice of **LINDA SUE CHEEK**, or A.Y. on her behalf, calling in prescriptions for controlled substances on the first patient visit and without patient examination by Dr. K. S., the DEA registrant, was repeated numerous times between February 2009 and May 2010.

31.     Patients who desired the stronger Schedule II controlled substances had to be seen by Dr. K. S. and subsequently made an appointment to see her on a Thursday. Dr. K. S. only wrote prescriptions for controlled substances at **LINDA SUE CHEEK**'s office, where she routinely saw patients on Thursdays. Dr. K. S. infrequently worked at New River Medical on other days of the week.

32.     It was the routine practice at New River Medical Associates, Inc., for Dr. K. S. to see patients once after their initial visit with **LINDA SUE CHEEK**. For follow-up visits thereafter, patients saw **LINDA SUE CHEEK** who handed out prescriptions previously pre-signed by Dr. K. S. On Thursdays, Dr. K. S. would routinely see the patients on her appointment list, review and sign the numerous patient notes from the

previous weeks' patients' visits with **LINDA SUE CHEEK**, and then sign more than 200

pre-printed prescriptions for Schedule II -V controlled substances for patients coming to

the practice to see **LINDA SUE CHEEK** in the following days before Dr. K. S.' next

visit, usually the next Thursday.

33.    On May 19, 2009, **LINDA SUE CHEEK** faxed a letter to the DEA Office

in Roanoke.  **LINDA SUE CHEEK** explained in her letter that she had hired Dr. K. S. to

write prescriptions for Schedule II through V controlled substances for her patients at

New River Medical Associates, Inc.

34.    On June 25, 2009, after Dr. K. S. had been interviewed by DEA, **LINDA**

**SUE CHEEK** prepared a written agreement which memorialized a supposed "Verbal

Contract" between Dr. K. S. and **LINDA SUE CHEEK** detailing their contractual

prescribing arrangement in place since February 23, 2009.  This contract provided the

following, in part:

> 2.    Dr. [K. S.] will see patients receiving schedule
> II medications for the first visit.  After that, she
> will approve the medications as recommended
> by Dr. Cheek and sign the prescriptions as
> needed.  Pts will be followed by Dr. Cheek on a
> regular basis at least every 90 days.

> 3.    Dr. [K. S.] does not need to see patients
> receiving Schedule 3-5 medications.  She will
> approve medications as recommended by Dr.
> Cheek and allow Dr. Cheek or her staff to call
> them in to the pharmacy in her name.

35.     The June 25, 2009, "Verbal Contract" included an "Addendum" which changed the previous verbal agreement to add, in part, that "Dr. [K.S.] will see all patients one time who are on any scheduled medication."

36.     On June 14, 2010, Dr. K. S. was again interviewed by DEA and a search was executed at **LINDA SUE CHEEK**'s medical office.  Thereafter, on June 16, 2010, a new Addendum was prepared.  This agreement provided that from that point forward, Dr. K. S. would call in any controlled substances in Schedules III through V.

37.     On May 6, 2010, **LINDA SUE CHEEK** sent a letter to the DEA Washington Division Diversion Program Manager's Office indicating that she, and not Dr. K. S., was the prescribing physician.  In this letter **LINDA SUE CHEEK** wrote "I do not use benzodiazepines if at all possible, and I especially stop  the use of Xanax."  "I rarely prescribe Oxycontin."

38.     On October 27, 2010, after consultation with an attorney, Dr. K. S. voluntarily surrendered her DEA controlled substances privileges acknowledging on the surrender form that she had not complied with the law:

> In view of my alleged failure to comply with the Federal requirements pertaining to controlled substances, and as an indication of my good faith in desiring to remedy any incorrect or unlawful practices on my part.

39.     On Thursday, October 28, 2010, Dr. K. S. went to **LINDA SUE CHEEK**'s medical office and advised **LINDA SUE CHEEK** that she had surrendered her DEA registration number.  After further discussion, **LINDA SUE CHEEK** asked Dr. K. S. if

she knew of another physician who could come "babysit" her practice and told her that the physician just had to be present and sign **LINDA SUE CHEEK**'s controlled substance prescriptions for her patients.

## COUNT  1
(Distribution of Schedule III Controlled Substances)

The Grand Jury charges:

1.      The allegations set forth in the Introduction to this Indictment are incorporated herein by reference.

2.      On or about February 23, 2009, in the Western District of Virginia, the defendant, **LINDA SUE CHEEK**, did knowingly, and intentionally dispense and distribute a mixture and substance containing a detectable amount of hydrocodone (Lortab), a Schedule III controlled substance, to R. L. without holding a valid Certificate of DEA Registration.

3.      In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(D) (2008) (violations involving Schedule III controlled substances occurring on or after April 13, 2009, are codified at 21 U.S.C. § 841(b)(1)(E)).

## COUNT  2
(Distribution of Schedule IV Controlled Substances)

The Grand Jury charges:

1.      The allegations set forth in the Introduction to this Indictment are incorporated herein by reference.

2.      On or about February 23, 2009, in the Western District of Virginia, the defendant, **LINDA SUE CHEEK**, did knowingly, and intentionally dispense and distribute a mixture and substance containing a detectable amount of Zolpidem tartrate (Ambien), a Schedule IV controlled substance,  to W. R. without holding a valid Certificate of DEA Registration.

3.      In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(2).


## COUNT  3
(Distribution of Schedule V Controlled Substances)

The Grand Jury charges:

1.      The allegations set forth in the Introduction to this Indictment are incorporated herein by reference.

2.      On or about March 20, 2009, in the Western District of Virginia, the defendant, **LINDA SUE CHEEK**, did knowingly, and intentionally dispense and distribute a mixture and substance containing a detectable amount of Lyrica, a Schedule V controlled substance, to J. B. without holding a valid Certificate of DEA Registration.

3.      In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(3).


## COUNT  4
(Distribution of Schedule III Controlled Substances)

The Grand Jury charges:

1.      The allegations set forth in the Introduction to this Indictment are incorporated herein by reference.

2.      On or about April 6, 2009, in the Western District of Virginia, the defendant, **LINDA SUE CHEEK**, did knowingly, and intentionally dispense and distribute a mixture and substance containing a detectable amount of hydrocodone (Lortab), a Schedule III controlled substance,  to J. S. without holding a valid Certificate of DEA Registration.

3.      In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(D) (2008) (violations involving Schedule III controlled substances occurring on or after April 13, 2009, are codified at 21 U.S.C. § 841(b)(1)(E)).

## COUNT  5
### (Distribution of Schedule IV Controlled Substances)

The Grand Jury charges:

1.      The allegations set forth in the Introduction to this Indictment are incorporated herein by reference.

2.      On or about May 14, 2009, in the Western District of Virginia, the defendant, **LINDA SUE CHEEK**, did knowingly, and intentionally dispense and distribute a mixture and substance containing a detectable amount of Zolpidem tartrate (Ambien), a Schedule IV controlled substance, to V.Y. without holding a valid Certificate of DEA Registration.

3.      In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(2).

## COUNTS  6 - 10
### (Use of a DEA Registration Number Which Was Revoked and Suspended)

The Grand Jury charges:

1.      The allegations set forth in the Introduction to this Indictment are incorporated herein by reference.

2.      On or about the dates set forth below, in the Western District of Virginia, the defendant, **LINDA SUE CHEEK**, knowingly and intentionally used a DEA registration number which had been revoked and suspended in the course of dispensing the controlled substances set forth below, each such use being a separate violation of law:

| Count # | Prescription Date | Patient | Drug Written | Quantity/ Refills | Schedule |
|---------|-------------------|---------|--------------|-------------------|----------|
| 6  | 2/23/09 | RL | Lortab 7.5 | 120/2R | III |
| 7  | 2/23/09 | WR | Ambien 10  | 30/5R  | IV  |
| 8  | 3/20/09 | JB | Lyrica 75  | 60/2R  | V   |
| 9  | 4/6/09  | JS | Lortab 7.5 | 60/1R  | III |
| 10 | 5/14/09 | VY | Ambien 10  | 30/5R  | IV  |

3.      In violation of Title 21, United States Code, Section 843(a)(2) and

843(d)(1), and Title 18, United States Code, Section 2.

## COUNTS 11 - 91
(Distribution of Schedule III and IV Controlled Substances)

The Grand Jury charges:

1.      The allegations set forth in the Introduction to this Indictment are

incorporated herein by reference.

2.      On or about the dates set forth below, the defendant, **LINDA SUE**

**CHEEK**, did knowingly and intentionally dispense and distribute and aid, abet, counsel,

command, induce, procure and willfully cause the dispensing and distribution of, a

mixture and substance containing a detectable amount of the controlled substances set

forth below to the persons set forth below by authorizing prescription "orders" (a) without

a valid DEA registration; and (b) not for a legitimate medical purpose by a practitioner

acting in the usual course of professional practice, each such dispensing and distribution

being a separate violation of law:

| Count # | Date Called in | Person Calling in | Patient | Drug | Quantity/ Refills | Schedule |
|---------|----------------|-------------------|---------|------|-------------------|----------|
| 11 | 3/3/09 | AY | EH | Hydrocodone 10 | 90 | III |
| 12 | 3/3/09 | Cheek | AT-1 | Hydrocodone 7.5 | 90 | III |
| 13 | 4/6/09 | AY | AT-1 | Hydrocodone 10 | 90/2R | III |
| 14 | 3/6/09 | AY | RG | Hydrocodone 10 | 40 | III |
| 15 | 3/6/09 | AY | RG | Diazepam 10 | 120 | IV |
| 16 | 3/10/09 | Cheek | CG | Hydrocodone 7.5 | 10 | III |
| 17 | 3/16/09 | Cheek | AW | Hydrocodone 10 | 60 | III |
| 18 | 3/16/09 | Cheek | AW | Diazepam 10 | 60 | IV |
| 19 | 3/17/09 | Cheek | VH | Hydrocodone 10 | 15 | III |
| 20 | 3/17/09 | Cheek | VH | Alprazolam 1 | 120 | IV |
| 21 | 3/20/09 | Unknown | DM | Hydrocodone 10 | 60 | III |
| 22 | 3/24/09 | Cheek | DP | Hydrocodone 7.5 | 12 | III |
| 23 | 3/25/09 | Cheek | CH | Hydrocodone 7.5 | 150 | III |
| 24 | 4/21/09 | Cheek | CH | Hydrocodone 7.5 | 150 | III |
| 25 | 3/30/09 | Cheek | WLS | Hydrocodone 10 | 15 | III |
| 26 | 3/30/09 | Cheek | WLS | Alprazolam .5 | 40 | IV |
| 27 | 3/30/09 | Cheek | WLS | Diazepam 5 | 60 | IV |
| 28 | 4/1/09 | Cheek | CR | Hydrocodone 10 | 60 | III |
| 29 | 4/5/09 | Cheek | RE | Hydrocodone 10 | 60 | III |
| 30 | 4/22/09 | Cheek | JF | Hydrocodone 5 | 20 | III |

| Count # | Date Called in | Person Calling in | Patient | Drug | Quantity/ Refills | Schedule |
|---------|----------------|-------------------|---------|------|-------------------|----------|
| 31 | 6/19/09 | AY | JF | Hydrocodone 10 | 20 | III |
| 32 | 5/4/09 | Cheek | DMc | Phentermine | 30 | IV |
| 33 | 6/10/09 | AY | DMc | Phentermine | 30 | IV |
| 34 | 5/5/09 | AY | AT-2 | Hydrocodone 10 | 20 | III |
| 35 | 5/6/09 | Cheek | LE | Hydrocodone 7.5 | 90 | III |
| 36 | 5/6/09 | Unknown | LE | Phentermine 30 | 30 | IV |
| 37 | 6/2/09 | AY | LE | Hydrocodone 10 | 90/1R | III |
| 38 | 6/2/09 | AY | LE | Phentermine 30 | 30/1R | IV |
| 39 | 8/5/09 | Cheek | LE | Hydrocodone 10 | 90/1R | III |
| 40 | 8/5/09 | Cheek | LE | Phentermine 30 | 30 | IV |
| 41 | 10/14/09 | AY | LE | Hydrocodone 10 | 90/3R | III |
| 42 | 10/14/09 | Unknown | LE | Phentermine 37.5 | 30 | IV |
| 43 | 5/6/09 | Cheek | DW | Hydrocodone 10 | 30 | III |
| 44 | 5/11/09 | Cheek | GT | Hydrocodone 10 | 90 | III |
| 45 | 5/11/09 | Cheek | GT | Diazepam 5 | 60 | IV |
| 46 | 5/20/09 | AY | JB | Hydrocodone 10 | 100 | III |
| 47 | 6/16/09 | AY | JB | Hydrocodone 10 | 40 | III |
| 48 | 5/28/09 | AY | SC-1 | Hydrocodone 10 | 45 | III |
| 49 | 5/29/09 | AY | BS | Hydrocodone 10 | 30 | III |
| 50 | 5/29/09 | AY | BS | Alprazolam 1 | 90 | IV |
| 51 | 5/29/09 | AY | ET | Hydrocodone 10 | 60 | III |
| 52 | 6/2/09 | AY | RH | Hydrocodone 5 | 120 | III |
| 53 | 6/2/09 | AY | RH | Alprazolam 1 | 45 | IV |

| Count # | Date Called in | Person Calling in | Patient | Drug | Quantity/ Refills | Schedule |
|---|---|---|---|---|---|---|
| 54 | 6/5/09 | AY | JS | Hydrocodone 7.5 | 90/1R | III |
| 55 | 8/5/09 | Cheek | JS | Lortab 7.5 | 90/3R | III |
| 56 | 6/5/09 | AY | WW | Hydrocodone 10 | 30 | III |
| 57 | 6/5/09 | AY | WW | Alprazolam 1 | 90 | IV |
| 58 | 6/5/09 | AY | WW | Clonazepam .5 | 60/1R | IV |
| 59 | 6/9/09 | AY | DF | Hydrocodone 7.5 | 20 | III |
| 60 | 10/16/09 | AY | DF | Hydrocodone 7.5 | 20 | III |
| 61 | 10/16/09 | AY | DF | Diazepam 5 | 20 | IV |
| 62 | 6/10/09 | AY | WB | Hydrocodone 10 | 120 | III |
| 63 | 6/17/09 | AY | AB | Hydrocodone 7.5 | 10 | III |
| 64 | 6/24/09 | Cheek | CR | Hydrocodone 7.5 | 30 | III |
| 65 | 7/20/09 | AY | MP | Hydrocodone 10 | 12 | III |
| 66 | 8/5/09 | Cheek | MF | Hydrocodone 7.5 | 5 | III |
| 67 | 9/2/09 | AY | AD | Lortab 10 | 5 | III |
| 68 | 9/17/09 | AY | GN | Hydrocodone 10 | 45 | III |
| 69 | 9/18/09 | Cheek | RR | Hydrocodone 7.5 | 25 | III |
| 70 | 10/20/09 | AY | RT | Hydrocodone 7.5 | 6 | III |
| 71 | 11/2/09 | AY | GS | Hydrocodone 7.5 | 40 | III |
| 72 | 11/4/09 | AY | JP | Hydrocodone 10 | 22 | III |
| 73 | 11/11/09 | BO | PB | Hydrocodone 7.5 | 25 | III |
| 74 | 11/18/09 | AY | TL | Hydrocodone 5 | 15 | III |
| 75 | 12/9/09 | AY | BC | Hydrocodone 7.5 | 24 | III |
| 76 | 12/9/09 | AY | BC | Diazepam 5 | 24 | IV |

| Count # | Date Called in | Person Calling in | Patient | Drug | Quantity/ Refills | Schedule |
|---------|----------------|-------------------|---------|------|-------------------|----------|
| 77 | 12/9/09 | AY | JD | Lortab 7.5 | 15 | III |
| 78 | 12/9/09 | AY | GD | Hydrocodone 7.5 | 25 | III |
| 79 | 12/11/09 | AY | SH | Hydrocodone 10 | 18 | III |
| 80 | 12/30/09 | Cheek | KS | Hydrocodone 10 | 30 | III |
| 81 | 12/31/09 | Cheek | JH | Hydrocodone 7.5 | 20 | III |
| 82 | 1/22/10 | AY | DC | Hydrocodone 10 | 25 | III |
| 83 | 1/22/10 | AY | DC | Alprazolam 1 | 20 | IV |
| 84 | 1/29/10 | AY | WG | Hydrocodone 10 | 20 | III |
| 85 | 2/8/10 | AY | JW | Hydrocodone 10 | 12 | III |
| 86 | 3/24/10 | AY | MB | Hydrocodone 7.5 | 24 | III |
| 87 | 4/19/10 | AY | TC | Hydrocodone 10 | 24 | III |
| 88 | 4/19/10 | AY | TC | Clonazepam 1 | 60 | IV |
| 89 | 4/28/10 | AY | LH | Hydrocodone 7.5 | 4 | III |
| 90 | 5/17/10 | AY | TA | Hydrocodone 7.5 | 21 | III |
| 91 | 5/19/10 | AY | SC-2 | Hydrocodone 7.5 | 5 | III |

3.      In violation of Title 21, United States Code, Sections 841(a)(1),

841(b)(1)(D) (for violations involving Schedule III controlled substances occurring before

April 13, 2009), 841(b)(1)(E) (for violations involving Schedule III controlled substances

occurring on or after April 13, 2009), 841(b)(2) (for violations involving Schedule IV

controlled substances),  Title 18, United States Code, Section 2, and Title 21, Code of

Federal Regulations, Section 1306.04(a).

### COUNTS  92 - 172
(Use of a DEA Registration Number Issued to Another Person)

The Grand Jury charges:

1.      The allegations set forth in the Introduction to this Indictment are incorporated herein by reference.

2.      On or about the dates set forth below, in the Western District of Virginia, the defendant, **LINDA SUE CHEEK**, knowingly and intentionally used, and aided, abetted, counseled, commanded, induced, procured and willfully caused the use of, a DEA registration number which was issued to another person, that is Dr. K. S., in the course of dispensing and distributing the controlled substances set forth below, each such "called in" prescription use being a separate violation of law:

| Count # | Date Called in | Person Calling in | Patient | Drug | Quantity/ Refills | Schedule |
|---|---|---|---|---|---|---|
| 92 | 3/3/09 | AY | EH | Hydrocodone 10 | 90 | III |
| 93 | 3/3/09 | Cheek | AT-1 | Hydrocodone 7.5 | 90 | III |
| 94 | 4/6/09 | AY | AT-1 | Hydrocodone 10 | 90/2R | III |
| 95 | 3/6/09 | AY | RG | Hydrocodone 10 | 40 | III |
| 96 | 3/6/09 | AY | RG | Diazepam 10 | 120 | IV |
| 97 | 3/10/09 | Cheek | CG | Hydrocodone 7.5 | 10 | III |
| 98 | 3/16/09 | Cheek | AW | Hydrocodone 10 | 60 | III |
| 99 | 3/16/09 | Cheek | AW | Diazepam 10 | 60 | IV |
| 100 | 3/17/09 | Cheek | VH | Hydrocodone 10 | 15 | III |
| 101 | 3/17/09 | Cheek | VH | Alprazolam 1 | 120 | IV |
| 102 | 3/20/09 | Unknown | DM | Hydrocodone 10 | 60 | III |

| Count # | Date Called in | Person Calling in | Patient | Drug | Quantity/ Refills | Schedule |
|---|---|---|---|---|---|---|
| 103 | 3/24/09 | Cheek | DP | Hydrocodone 7.5 | 12 | III |
| 104 | 3/25/09 | Cheek | CH | Hydrocodone 7.5 | 150 | III |
| 105 | 4/21/09 | Cheek | CH | Hydrocodone 7.5 | 150 | III |
| 106 | 3/30/09 | Cheek | WLS | Hydrocodone 10 | 15 | III |
| 107 | 3/30/09 | Cheek | WLS | Alprazolam .5 | 40 | IV |
| 108 | 3/30/09 | Cheek | WLS | Diazepam 5 | 60 | IV |
| 109 | 4/1/09 | Cheek | CR | Hydrocodone 10 | 60 | III |
| 110 | 4/5/09 | Cheek | RE | Hydrocodone 10 | 60 | III |
| 111 | 4/22/09 | Cheek | JF | Hydrocodone 5 | 20 | III |
| 112 | 6/19/09 | AY | JF | Hydrocodone 10 | 20 | III |
| 113 | 5/4/09 | Cheek | DMc | Phentermine | 30 | IV |
| 114 | 6/10/09 | AY | DMc | Phentermine | 30 | IV |
| 115 | 5/5/09 | AY | AT-2 | Hydrocodone 10 | 20 | III |
| 116 | 5/6/09 | Cheek | LE | Hydrocodone 7.5 | 90 | III |
| 117 | 5/6/09 | Unknown | LE | Phentermine 30 | 30 | IV |
| 118 | 6/2/09 | AY | LE | Hydrocodone 10 | 90/1R | III |
| 119 | 6/2/09 | AY | LE | Phentermine 30 | 30/1R | IV |
| 120 | 8/5/09 | Cheek | LE | Hydrocodone 10 | 90/1R | III |
| 121 | 8/5/09 | Cheek | LE | Phentermine 30 | 30 | IV |
| 122 | 10/14/09 | AY | LE | Hydrocodone 10 | 90/3R | III |
| 123 | 10/14/09 | Unknown | LE | Phentermine 37.5 | 30 | IV |
| 124 | 5/6/09 | Cheek | DW | Hydrocodone 10 | 30 | III |
| 125 | 5/11/09 | Cheek | GT | Hydrocodone 10 | 90 | III |
| 126 | 5/11/09 | Cheek | GT | Diazepam 5 | 60 | IV |
| 127 | 5/20/09 | AY | JB | Hydrocodone 10 | 100 | III |

| Count # | Date Called in | Person Calling in | Patient | Drug | Quantity/ Refills | Schedule |
|---|---|---|---|---|---|---|
| 128 | 6/16/09 | AY | JB | Hydrocodone 10 | 40 | III |
| 129 | 5/28/09 | AY | SC-1 | Hydrocodone 10 | 45 | III |
| 130 | 5/29/09 | AY | BS | Hydrocodone 10 | 30 | III |
| 131 | 5/29/09 | AY | BS | Alprazolam 1 | 90 | IV |
| 132 | 5/29/09 | AY | ET | Hydrocodone 10 | 60 | III |
| 133 | 6/2/09 | AY | RH | Hydrocodone 5 | 120 | III |
| 134 | 6/2/09 | AY | RH | Alprazolam 1 | 45 | IV |
| 135 | 6/5/09 | AY | JS | Hydrocodone 7.5 | 90/1R | III |
| 136 | 8/5/09 | Cheek | JS | Lortab 7.5 | 90/3R | III |
| 137 | 6/5/09 | AY | WW | Hydrocodone 10 | 30 | III |
| 138 | 6/5/09 | AY | WW | Alprazolam 1 | 90 | IV |
| 139 | 6/5/09 | AY | WW | Clonazepam .5 | 60/1R | IV |
| 140 | 6/9/09 | AY | DF | Hydrocodone 7.5 | 20 | III |
| 141 | 10/16/09 | AY | DF | Hydrocodone 7.5 | 20 | III |
| 142 | 10/16/09 | AY | DF | Diazepam 5 | 20 | IV |
| 143 | 6/10/09 | AY | WB | Hydrocodone 10 | 120 | III |
| 144 | 6/17/09 | AY | AB | Hydrocodone 7.5 | 10 | III |
| 145 | 6/24/09 | Cheek | CR | Hydrocodone 7.5 | 30 | III |
| 146 | 7/20/09 | AY | MP | Hydrocodone 10 | 12 | III |
| 147 | 8/5/09 | Cheek | MF | Hydrocodone 7.5 | 5 | III |
| 148 | 9/2/09 | AY | AD | Lortab 10 | 5 | III |
| 149 | 9/17/09 | AY | GN | Hydrocodone 10 | 45 | III |
| 150 | 9/18/09 | Cheek | RR | Hydrocodone 7.5 | 25 | III |
| 151 | 10/20/09 | AY | RT | Hydrocodone 7.5 | 6 | III |
| 152 | 11/2/09 | AY | GS | Hydrocodone 7.5 | 40 | III |

| Count # | Date Called in | Person Calling in | Patient | Drug | Quantity/ Refills | Schedule |
|---|---|---|---|---|---|---|
| 153 | 11/4/09 | AY | JP | Hydrocodone 10 | 22 | III |
| 154 | 11/11/09 | BO | PB | Hydrocodone 7.5 | 25 | III |
| 155 | 11/18/09 | AY | TL | Hydrocodone 5 | 15 | III |
| 156 | 12/9/09 | AY | BC | Hydrocodone 7.5 | 24 | III |
| 157 | 12/9/09 | AY | BC | Diazepam 5 | 24 | IV |
| 158 | 12/9/09 | AY | JD | Lortab 7.5 | 15 | III |
| 159 | 12/9/09 | AY | GD | Hydrocodone 7.5 | 25 | III |
| 160 | 12/11/09 | AY | SH | Hydrocodone 10 | 18 | III |
| 161 | 12/30/09 | Cheek | KS | Hydrocodone 10 | 30 | III |
| 162 | 12/31/09 | Cheek | JH | Hydrocodone 7.5 | 20 | III |
| 163 | 1/22/10 | AY | DC | Hydrocodone 10 | 25 | III |
| 164 | 1/22/10 | AY | DC | Alprazolam 1 | 20 | IV |
| 165 | 1/29/10 | AY | WG | Hydrocodone 10 | 20 | III |
| 166 | 2/8/10 | AY | JW | Hydrocodone 10 | 12 | III |
| 167 | 3/24/10 | AY | MB | Hydrocodone 7.5 | 24 | III |
| 168 | 4/19/10 | AY | TC | Hydrocodone 10 | 24 | III |
| 169 | 4/19/10 | AY | TC | Clonazepam 1 | 60 | IV |
| 170 | 4/28/10 | AY | LH | Hydrocodone 7.5 | 4 | III |
| 171 | 5/17/10 | AY | TA | Hydrocodone 7.5 | 21 | III |
| 172 | 5/19/10 | AY | SC-2 | Hydrocodone 7.5 | 5 | III |

3.      In violation of Title 21, United States Code, Section 843(a)(2) and 843(d)(1),

and Title 18, United States Code, Section 2.

## COUNT 173
(Maintaining Drug-Involved Premises)

The Grand Jury charges:

1.      The allegations set forth in the Introduction to this Indictment are incorporated herein by reference.

2.      Between on or about February 23, 2009 and continuing thereafter until at least October 27, 2010, the defendant, **LINDA SUE CHEEK**, knowingly and intentionally maintained, and aided and abetted the maintenance, of 28-32 Town Center Drive, Dublin, Virginia, the address of New River Medical Associates, Inc., for the purpose of unlawfully distributing controlled substances, specifically including, but not limited to, a mixture and substance containing a detectable amount of controlled substances such as hydrocodone, diazepam, Alprazolam, Phentermine, Ambien, Lyrica, Clonazepam, methadone, morphine, oxycodone, oxymorphone, fentanyl and Adderall.

3.      In violation of Title 21, United States Code, Section 856(a)(1) and Title 18, United States Code, Section 2.


## NOTICE OF FORFEITURE

1.  Upon conviction of one or more of the felony offenses alleged in this Indictment, the defendant shall forfeit to the United States:

(a)      any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of said offenses, pursuant to 21 U.S.C. § 853(a)(1).

(b)     any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of said offenses, pursuant to 21 U.S.C. § 853(a)(2).

2. The property to be forfeited to the United States includes but is not limited to the

following property:

(a)     **Money Judgment**
        An undetermined sum of United States currency and all interest and proceeds traceable thereto, in that such sum in aggregate was obtained directly or indirectly as a result of said offenses or is traceable to such property.

(b)     **Real Property**

              28-32 Town Center Drive, Dublin VA (commercial)
                      Tax Map #056-061-0000-0004

All that certain lot or parcel of land together with the easements and appurtenances thereunto belonging, situate, lying and being in the Town of Dublin, Pulaski County, Virginia, being more particularly described as follows, to-wit: ALL of that certain 0.7855 acre tract, more or commonly referred to as Lot four (4) in the Dublin Town Center, as described on that certain plat entitled, "PLAT SHOWING 10' PUBLIC UTILITY EASEMENT LOT 4 DUBLIN TOWN CENTER, TOWN OF DUBLIN, PULASKI COUNTY, VIRGINIA", as prepared by Mathews & Henegar, Professional Land Surveyors, dated October 11, 1996, a copy of which is attached hereto, and made a part hereof, and reference is hereby made to said plat of survey for a more accurate description of the property herein conveyed.  Tax Map Number 056-031-0000-0004.

BEING the same property conveyed via Deed dated April 22, 1999, to CBA Associates, L.L.C., a Virginia Limited Liability Company, from Samuel H. Tollison.  Said Deed is recorded in the Circuit Court of Pulaski County, Virginia, as LR1999003358.

3. If any of the above-described forfeitable property, as a result of any act or

omission of the defendant:

(a) cannot be located upon the exercise of due diligence;
(b) has been transferred or sold to, or deposited with a third person;
(c) has been placed beyond the jurisdiction of the Court;
(d) has been substantially diminished in value; or
(e) has been commingled with other property which cannot be
subdivided without difficulty;

it is the intent of the United States to seek forfeiture of any other property of the defendant

up to the value of the above-described forfeitable property, pursuant to 21 U.S.C. § 853(p),

including but not limited to the property described below:

(i)     4888 Miller Ridge Road, Dublin, VA (residential)
        Tax Map # 046-008-0000-0004

All that certain lot or parcel of land with all the easements and
appurtenances thereunto belonging or in anywise appertaining thereto,
situate, lying and being in the Massie Magisterial District of the County of
Pulaski, Virginia, and as more particularly described as follows: All of Tract
4, containing 29.8491 acres located on Black Hollow Road as shown on the
survey map entitled "PLAT Showing Tract No. 4 Miller Place Subdivision
for A.C. III & Carolyn B. Spotts in Massie Magisterial District, Pulaski
County, Virginia", dated October 23, 1992 and prepared by Mathews &
Henegar, Professional Land Surveyors, Dublin, Virginia, and recorded in the
Clerk's Office of the Circuit Court of the County of Pulaski, Virginia in
Slide 276, page 4, and further designated and described as Being all of Tract
No. Four (4) containing 29.8290 acres located on Black Hollow Road as
shown on a survey entitled "Physical Survey Tract No. 4, Miller Place
Subdivision, Pulaski County, Virginia, for Linda C. Aylesworth and Martin
S. Aylesworth", prepared by Mathews & Henegar, Professional Land
Surveyors, dated May 21, 1996, a copy of which plat is recorded in the
aforesaid Clerk's Office in Deed Book 574, page 241 which reference is
hereby made to said plats for a more accurate description of the property
herein conveyed. Tax Map #046-008-0000-0004.

TOGETHER WITH AND APPURTENANT THEREUNTO BELONGING
a non-exclusive 50' perpetual easement and right of way from the above
described Tract across Miller Ridge Road to Black Hollow Road, State
Route 636, as shown on the survey map of Miller Place Subdivision

prepared by R. Lloyd Mathews dated April 29, 1992, and recorded in the aforesaid Clerk's Office in Cabinet 1, Slide 273, page 5, but subject to the rights of others in and to the use thereof.

BEING the same property conveyed via Deed dated July 22, 2004, to Linda S. Cheek from Martin S. Aylesworth, divorced and Linda C. Aylesworth a/k/a Linda S. Cheek, divorced.  Said Deed is recorded in the Circuit Court of Pulaski County, Virginia, as LR2004004714.

A **TRUE BILL**, this _24th_ day of May, 2012.

Robert C. Aydlett
**FOREMAN**

TIMOTHY J. HEAPHY
UNITED STATES ATTORNEY